HENRY HOLST, PLAINTIFF IN ERROR, V. FERDINAND
STREITZ, DEFENDANT IN ERROR.

Municipal Corporations: PLATTING LOTS AND STREETS. The
intention of the proprietor of a town site as to the streets and
lots therein is indicated by the monuments which he has caused
to be placed at the corners of the lots, and by his conveyance of
the streets to the public, and in case of variance between the
plat and survey the lines actually run and marked on the ground
will control.

ERROR to the district court for Douglas county. Tried
below before WAKELEY, J.

*Charles H. Brown* and *I. S. Hascall*, for plaintiff in error, cited: Dillon Mun. Corp., §§ 493–5. Bigelow Estoppel, 558–60. *Bauer v. Gottmanhausen*, 65 Ill., 499. *Diehl v. Zanger*, 39 Mich., 601. *Stafford v. King*, 30 Tex., 273. *Minkler v. The State*, 14 Neb., 181. *Morrison v. Neff, post.*

*E. W. Simeral* and *George W. Doane*, for defendant in error, cited *inter alia: Parkinson v. McQuaid*, 54 Wis., 473. *Woods v. Robinson*, 58 Tex., 655. *Lampe v. Kennedy*, 45 Wis., 23. *Allen v. Reed*, 51 Cal., 362. Tyler Boundaries, 284.

MAXWELL, J.

In January, 1868, John George Hartman filed in the clerk's office of Douglas county a plat of an addition to the city of Omaha. Attached to said plat was the following:
"State of Nebraska, }
  Douglas County. }

"I, John George Hartman, do hereby claim that, as proprietor, I have laid out upon the north-east quarter and part of the south-east quarter of the north-west quarter of section twenty-seven, in township fifteen north, of thirteen (west), an addition to the city of Omaha, to be called and known as Hartman's addition to the city of Omaha; and that I have caused the within accurate map and plat of the same to be made out, particularly describing the lots and streets belonging to said addition, and have numbered and named said lots and streets as designated by numbers and names on the said within map.

"Witness my hand this third day of January, A.D. 1868.
                                "J. G. HARTMAN.
"State of Nebraska, }
  Douglas County, }

"On this third day of January, A.D. 1868, before me, a notary public in and for said county, came personally John

G. Hartman, who is well known to me to be the identical person whose name is affixed to the above instrument, and acknowledged the same and the within map to be his voluntary act and deed.

"Witness my hand and official seal the day and year above written.

"WATSON B. SMITH,<br>
"<i>Notary Public.</i>

"We do hereby certify that we have accurately surveyed 'Hartman's addition to Omaha,' and that streets, alleys, and lots indicated on above map are well and accurately staked off and marked.

"Witness our hands this third day of January, 1868.

"WM. KIPP, C. E.<br>
"R. C. BAMAEN, C. E."

Sec. 42, of chap. 53 of the Revised Statutes, in force at the time of filing the above plat, was as follows: "The proprietor of any land may lay out a town or addition to any town, and he shall cause an accurate map or plat to be made out particularly describing the lots, streets, avenues, lanes, alleys, or other grounds belonging to such town or addition. The lots must be designated by their numbers, and the streets, alleys, avenues, lanes, and other grounds must be designated by names or numbers, and such plat shall be acknowledged before some court or officer authorized to take the acknowledgment of deeds or conveyances of real estate, and when such map or plat is made out and acknowledged the same shall be filed and recorded in the office of the county clerk of the county."

"Sec. 43. Such plat and acknowledgment being so recorded shall be equivalent to a deed in fee simple from the proprietor of all streets, alleys, avenues, squares, parks, and commons, and such portion of the land as is therein set apart for public, county, village, town, or city use, or is dedicated to charitable, religious, or educational purposes."

The testimony shows that the streets and lots in Hart-

man's addition were duly laid out and marked on the ground by stakes. This, with the filing of the plat duly acknowledged, operated as a conveyance to the public of the streets. While there is a mistake in the range of the township being 13 *west* instead of east, sufficient appears to show that the land intended is a part of the city of Omaha.

In July, 1868, lots 20 and 45 in said addition were conveyed by Hartman to one Henry Bartols, who in November, 1873, conveyed the same to William Ruth. In January, 1876, Ruth conveyed lot 20 to one Mayenski, who in January, 1880, conveyed to the defendant. The defendant also, in April, 1880, purchased lot 21 in said addition, the title being derived from Hartman.

In 1879 the plaintiff in error purchased and is occupying lot 24 in said addition.

In January, 1883, the defendant in error commenced an action in the district court of Douglas county to recover the possession of a tract of land "commencing at a point 1,275 feet north and 125 feet west of the south-east corner of the north-west ¼ of sec. 27, in township 15, range 13 east of the 6th principal meridian, and running thence north 45 feet, thence west 93 feet, thence south 45 feet, thence east 93 feet to the place of beginning, being parts of lots 20 and 21 in Hartman's addition to the city of Omaha." On the trial of the cause in the court below, judgment was rendered in favor of the defendant in error.

The testimony shows that the boundaries of lots 20 and 21, and also of 24, are in exact accord with the original survey made by Hartman; but the defendant in error contends that the plat does not conform to the actual survey on the land, the plat showing that lots 20 and 21 should extend about 45 feet further south than they were staked out on the land, which would take about 45 feet off from the northern part of lot 24. In other words, it is sought in this action to correct alleged errors in the actual survey on the face of the earth by changing the boundaries of the

streets and lots to conform to the plat. This is placed upon the ground that the intention of Hartman in causing the survey and plat to be made is to govern. Without discussing the question of mistake, as in our view it does not enter into this case, the purchaser of a lot may rely upon the boundaries of the same marked out by authority of the proprietor when the land was laid out into town lots. As to a purchaser the intention of the proprietor is indicated by the monuments which he has caused to be placed at the corners of the lots, and by his conveyance of the streets to the public. In the absence of fraud or collusion, a purchaser of lots lawfully platted and belonging to the proprietor need not look beyond the actual survey on the ground to see whether or not the entire survey and plat accurately cover the entire tract intended to be laid out. The lines actually run on the ground must control, and as to a purchaser are conclusive. *Evansville v. Page*, 23 Ind., 525. *Marsh v. Mitchell*, 25 Wis., 706. *Lampe v. Kennedy*, 45 Wis., 23. *Lampe v. Kennedy*, 49 Wis., 601. *Fleischfresser v. Schmidt*, 41 Wis., 223. *McClintock v. Rogers*, 11 Ill., 279. *Bauer v. Gottmanhausen*, 65 Ill., 500. *O'Farrell v. Harney*, 51 Cal., 125. *Burnett v. Burriss*, 39 Tex., 501. *Diehl v. Zanger*, 39 Mich., 601. *Flynn v. Glenney*, 17 N. W. R., 65.

If any purchaser of a city lot could at any time assail the original survey and plat, and upon showing a mistake therein change the boundaries of streets and lots at his pleasure, such property would be held by a very precarious tenure. But such is not the law. The judgment of the district court is therefore reversed and the action dismissed. The costs in the district court we find taxed at the sum of $267.78. The entire record covers less than 100 pages, and the costs seem to be entirely too large; but the remedy is a motion in the district court to re-tax.

REVERSED AND DISMISSED.

THE other judges concur.