Las Monjas Racing Corporation, peticionaria, *v.* La Corte de Distrito del Distrito Judicial de San Juan, Hon. Pablo Berga, Juez, demandada.

No. 670.—*Sometido:* Noviembre 10, 1929. *Resuelto:* Diciembre 13, 1929.

*Feliú & La Costa*, abogados de la peticionaria; *G. de la Haba* y *E. Rivera Zayas*, abogados del interventor.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

El 24 de julio de 1929 se presentó ante este Tribunal una petición de *certiorari* en la que se expusieron substancialmente los siguientes hechos:

Que Ernesto D. Reyes presentó en la Corte de Distrito de San Juan una acción contra Las Monjas Racing Corporation, peticionaria en este caso; que el 23 de julio de 1929 la citada corte de distrito, en aseguramiento de la efectividad de la sentencia, decretó lo que equivalía a una orden de interdicto prohibitorio (*restraining order*), en la que se requería a la susodicha peticionaria que se abstuviera de ejecutar acto o dar paso alguno que perturbara el derecho del referido Ernesto D. Reyes a vender cuadros del *pool,* de acuerdo con el contrato que alegó estaba en vigor entre él y la peticionaria; que dicho Ernesto D. Reyes reclamó el derecho exclusivo de vender ciertos cuadros para el *pool* por el término de quince años, y que la Corte de Distrito de San Juan expidió la aludida orden después de exigir al mencionado Ernesto D. Reyes que prestara una fianza por $1,000.

La peticionaria alegó que la Corte de Distrito de San Juan no tenía poder o autoridad alguna para decretar esa orden, porque no se alegaba causa de acción alguna en la demanda, y porque, como dicha demanda no era susceptible de corrección o enmienda, la Corte de Distrito de San Juan carecía de jurisdicción para expedir la referida orden, citando el caso de *Armstrong* v. *Irizarry,* 29 D.P.R. 606.

La peticionaria alegó además que no existía causa de acción, toda vez que no podía decretarse el cumplimiento específico del contrato; y posteriormente se desprendió que la dicha petición se basaba en la teoría de que el contrato en cuestión era enteramente nulo por carecer de mutualidad.

En la petición entonces se alegaba que por virtud de una

ley de la Legislatura, incumbía a la peticionaria Las Monjas Racing Corporation vender por sí misma los cuadros para el *pool,* y que esta disposición de ley empezaría a regir el 25 de julio de 1929. En la petición se decía, además, que si bien podía obtenerse algún remedio mediante moción, sin embargo, tal procedimiento no era adecuado, por estar este tribunal próximo a entrar en vacaciones y no poder verse la apelación antes de noviembre, y que la peticionaria podía es-. tar sujeta a alguna penalidad si no daba principio a la venta, según exigía la ley.

No trataremos de transcribir todos los motivos por los cuales la peticionaria acudió a esta corte. Baste decir que consideramos la petición de *certiorari* y libramos un auto de *supersedeas* para conservar el *status quo.*

■■ De conformidad con la Ley de marzo 10, 1904, este Tribunal queda autorizado para librar autos de *certiorari* en aquellos casos en que el procedimiento adoptado no está de acuerdo con las prescripciones de la ley. La experiencia y la costumbre han demostrado que debe procederse parca- mente al expedirse el auto. Aún más parcamente debe in- vocarse nuestra facultad antes de que las cuestiones a dilu- cidar hayan sido sometidas libremente a la corte inferior para su fallo. Por regla general, aun cuando el procedi- miento adoptado no esté de acuerdo con las prescripciones de la ley, debe dársele oportunidad a la corte de distrito para corregir una actuación improcedente antes de recurrirse a este Tribunal. En realidad, la peticionaria, según revelan los autos, presentó una moción para anular la orden de em- bargo, pero aparentemente la peticionaria asumió que la de- cisión de la corte inferior le sería adversa. Si la peticiona- ria tenía una defensa válida contra la orden de embargo, si en realidad de verdad la corte no tenía jurisdicción, la pre- sunción ordinaria sería que la corte de derecho fallaría a su favor. Cuando, después de oír a ambas partes, una corte ha tomado una posición definida en un caso pendiente o en uno similar, hay alguna base; pero sin tal condición previa,

por lo general debe denegarse un auto de *certiorari* cuando a la corte inferior no se le ha dado oportunidad de resolver la cuestión principal. Nunca podría asumirse que cuando la corte inferior carezca en absoluto de jurisdicción, un letrado hábil no pueda convencerla de tal estado de cosas. Sin dar a la corte esa oportunidad de oír a las partes y fallar, podría dudarse seriamente que hubiera derecho a decidir que el procedimiento no se ajusta a las disposiciones de la ley. La regla es que las cuestiones en controversia deben someterse a la corte de primera instancia.

Sabemos, desde luego, que en el caso de *El Municipio de Río Piedras* v. *Berga,* emitimos una decisión *per curiam,* en julio 26, 1929, (ante, página 37), anulando un embargo, y entramos a considerar la causa de acción, pero un examen de los autos de ese caso revelará que la situación exigía esa actuación extraordinaria, y además, en aquel caso se radicó una moción sobre levantamiento de embargo que fué debidamente oída y resuelta por la corte inferior.

El contrato, tal como se ha presentado en el caso, demuestra que Ernesto D. Reyes obtuvo de la peticionaria el privilegio de vender al público en los terrenos del hipódromo los impresos o cuadros en que los apostadores en las carreras hacen una selección de los caballos que estiman como probables ganadores. El alegado contrato era por quince años.

La ley de la Legislatura, No. 44, de 1929, aprobada el 26 de abril de este año, y que empezó a regir noventa días después, contiene un *disponiéndose* en su artículo 15 que lee así:

" . . . *Disponiéndose,* que los impresos para el juego de combinaciones en el *pool* deberán venderse por las corporaciones explotadoras de los hipódromos a cinco (5) centavos cada uno, y el producto de la venta de tales impresos, después de descontar dos (2) centavos para gastos de impresión y venta de los mismos, por impreso, deberá ingresar en el Tesoro Insular para ser invertido por el Comisionado de Sanidad en la profilaxia de la tuberculosis en los niños."

El referido *disponiéndose* de dicho artículo 15 fué suprimido por la Ley No. 9 de la sesión extraordinaria, aprobada el primero de julio de 1929.

De manera que cualesquiera derechos que pudiera tener la peticionaria a causa de la existencia temporal de dicho *disponiéndose*, debieron haber sido determinados primeramente por la corte inferior. En gran escala, la cuestión parece ser académica.

*A fortiori*, la cuestión de mutualidad en el contrato, o de si el interventor tenía causa de acción, debió haberse resuelto primeramente en igual forma.

La peticionaria hizo algún hincapié en nuestra decisión en el caso de *El Municipio de Río Piedras* v. *Berga, supra,* donde resolvimos que el propósito del aseguramiento de la efectividad de la sentencia no debía tener el efecto de una sentencia final, y que la ley de *injunction* también regía. Empero, no resolvimos, ni tuvimos la intención de resolver, que las medidas provisionales no podrían hasta cierto punto anticipar el efecto de una sentencia. En verdad, un examen más detenido del estado de la ley y de nuestras decisiones nos convence de que cuando un embargo procede, debe dársele preferencia sobre el remedio de *injunction,* que es más extraordinario. *Goffinet* v. *Polanco* 30 D.P.R. 826, 835; *Rivera* v. *López,* 19 D.P.R. 640; *Hermida & Palos* v. *Cestera,* 20 D.P.R. 452; *Santiago* v. *Capó,* 33 D.P.R. 358; *Nadal* v. *Carrión,* 35 D.P.R. 195, 198.

Por tanto, no hallamos motivo alguno para anular ahora el embargo, y mucho menos hasta que todas las cuestiones hayan sido debidamente consideradas por la corte de distrito.

*El auto de "certiorari" y la orden de "supersedeas" deben ser anulados, y devolverse el caso a la Corte de Distrito de San Juan para ulteriores procedimientos no inconsistentes con esta opinión.*